# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

DANIEL M. ANDREOLA, SR.,

        Plaintiff,

    v.                                Case No. 04-C-0282

STATE OF WISCONSIN, *et al.*,

        Defendants.

---

## MEMORANDUM AND ORDER

---

Plaintiff Daniel Andreola filed a civil rights action under 42 U.S.C. § 1983, alleging that various defendants violated his First Amendment right to free exercise of his religion during his incarceration in Wisconsin state prisons. The court dismissed most of plaintiff's claims in its Order of March 28, 2005. Still pending is plaintiff's claim that Defendants O'Donnell, Althaus, Kester, Bett, and Glass denied him a kosher diet while he was incarcerated at the Dodge Correctional Institution (DCI).[1] The remaining defendants have moved for summary judgment on grounds of qualified immunity. For the following reasons, defendants' motion will be denied.

The court has set forth the relevant facts in its previous orders but will briefly recount them here. Plaintiff identified himself as an Orthodox Jew and requested a religious diet upon arriving

---

[1]Defendants O'Donnell, Althaus, Kester and Bett appear to have no involvement in the case beyond having received and ruled on plaintiff's inmate complaints. A § 1983 action against inmate complaint examiners is not an appropriate means of collaterally attacking those examiners' decisions. *Borzych v. Frank*, 2004 WL 2491597, at *2 ((W. D. Wis. Oct. 28, 2004) ("[T[his court has no authority to review the wisdom or correctness of complaint examiner decisions or recommendations.").

at DCI on November 14, 2003. The prison chaplain approved the diet on November 25, 2003, and Defendant Dennis Glass (the Food Service Administrator at DCI) received notice of that approval the following day.

In an affidavit previously submitted in support of summary judgment, Glass averred that he was "concerned about spending budget monies on Kosher meals that would most likely not arrive at DCI until after Andreola transferred to [OSCI]." (Glass Aff. ¶ 19.) Specially ordered kosher meals, if ordered, would most likely not have arrived at DCI until after plaintiff was transferred. (Glass Aff. ¶ 21.) No other inmates at DCI had requested or been approved to receive a kosher diet. (Glass Aff. ¶ 19.) Therefore, Glass "made the decision to forego ordering the special Kosher meals and [to] try to meet [plaintiff's] requests with the food . . . available at DCI prior to his transfer." (Glass Aff. ¶ 19.) Glass was "not aware of any other institutions from which [he] could borrow Kosher meals to serve [plaintiff] during his brief stay at DCI."[2] (Glass Aff. ¶ 20.) Glass stated that the actions he took with respect to the plaintiff's requested religious diet were not intended to prohibit or restrict the plaintiff's right to practice his religion. (Glass Aff. ¶ 22.)

In its Order of March 28, the court explained the concerns that precluded it from granting summary judgment in defendants' favor:

> The plaintiff's claim is not limited to the failure of DCI officials to order specially-prepared kosher meals. Rather, as the defendants elsewhere acknowledge, the plaintiff claims that he was denied "any Kosher diet" at DCI between November 25, 2003, and January 12, 2004. (Defs.' Br. at 12.) The record contains some information about individual food items available from the regular prison menu, as well as items regularly stored in the DCI kitchen, that might be considered kosher. However, while defendants assert that "[t]he plaintiff and all other DCI inmates were provided with these items during mealtimes" (Glass Aff. ¶ 10), it is not clear whether the items provided would have enabled the plaintiff to consume three

---

[2]Plaintiff left DCI on January 12, 2004.

2

nutritionally-balanced meals per day. . . . Nor is it clear whether the plaintiff was in a position to make use of items such as flour and honey, even assuming that he considered them kosher.

(Order of March 28, 2005 at 15.)

Defendants now provide, in support of a renewed motion for summary judgment, the affidavit of Jeffrey M. Capelle, a Food Service Administrator at DCI. Capelle states that "after being notified of [plaintiff's] request for a Kosher diet, [he] assisted in attempting to provide [plaintiff] with a Kosher diet by surveying the DCI kitchen's can goods and looking for canned goods that were labeled as Kosher." (Capelle Aff. ¶ 5.) Capelle states that "the DCI kitchen had many canned foods that were labeled as Kosher, and those foods would have been served to [plaintiff]. [Plaintiff] would also have been served fresh fruits and vegetables. Additionally, hard-cooked eggs with the shells intact would have been provided to [plaintiff]." (*Id.*) Capelle opines, based on his experience and expertise related to nutrition, that plaintiff "would have received nutritionally based meals with the consumption of the Kosher-labeled canned foods, Kosher cereals, fresh fruits and vegetables and hard-cooked eggs during the time he was housed at DCI." (Capelle Aff. ¶ 6.)

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the initial burden of demonstrating that it is entitled to summary judgment. *Id.* at 323. Once this burden is met, the nonmoving party must designate specific facts to support or defend its case. *Id.* at 322-24.

3

In analyzing whether a question of fact exists, the court construes the evidence in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The mere existence of some factual dispute does not defeat a summary judgment motion, however; there must be a *genuine* issue of *material* fact for the case to survive. *Id.* at 247-48.

The threshold inquiry in a qualified immunity analysis is whether the plaintiff's allegations, if true, establish a constitutional violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the allegations do establish such a violation, the court must then determine whether the right violated was clearly established. *Id.* In order for a constitutional right to be clearly established, "its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (internal citations omitted).

A prisoner clearly has a right to practice his religion so long as he does not unduly burden the prison by doing so. *Turner v. Safley*, 482 U.S. 78 (1987); *Richards v. White*, 957 F.2d 471 (7th Cir. 1992). Precisely how far prison officials must go to accommodate a prisoner's request for a religious diet is less clear. *Compare Beerheide v. Suthers*, 286 F.3d 1179 (10th Cir. 2002) (affirming district court's entry of injunction that required prison to establish a "modified kosher kitchen" with "a microwave oven, preparation table, two cutting boards, two non-disposable knives, one pot, one pan, plastic tubs, plastic storage drawers, plastic wear and trays, butcher paper, and aluminum foil for exclusive use in the preparation of the kosher meals," at a cost of $13,000 per year) *with Kahey*

4

*v. Jones*, 836 F.2d 948 (5th Cir. 1988) (holding that prison is not obliged to provide "special food and individualized processing and containers" in response to inmate's request for a religious diet). The leading Seventh Circuit case on religious diets, *Hunafa v. Murphy*, 907 F.2d 46 (7th Cir. 1990), cited *Kahey* approvingly and noted that *Employment Division v. Smith*, 494 U.S. 872 (1990), "cut back, possibly to minute dimensions, the doctrine that requires government to accommodate, at some cost, minority religious preferences: the doctrine on which all the prison religion cases are founded." *Hunafa*, 907 F.2d at 48. In light of that citation and that statement, the court holds that defendants were not obliged to make more than *de minimis* efforts or expenditures to accommodate plaintiff's dietary requests.

The difficulty with defendants' affidavits is that they do not tell the court what the defendants–or anyone else–did to provide plaintiff with a kosher diet. All the affidavits state is that some of the foods contained in the kitchen and provided at least occasionally to plaintiff are those that would be considered kosher. Was plaintiff actually provided with sufficient items at each meal to eat a balanced, kosher diet? Or is it merely possible to assemble such a diet from items in the DCI kitchen? Plaintiff swears that no one at DCI ever pointed out any kosher food items to him, and that throughout his incarceration at DCI he was served the same meals as the other inmates. (8/9/05 Andreola Aff. ¶¶ 1-2.) If this is true–and it must be taken as true on defendants' motion for summary judgment–it does not support the contention that defendants made even a *de minimis* effort to provide plaintiff with a kosher diet. Accordingly, the court must deny defendants' motion for summary judgment.

Plaintiff has filed two motions for preliminary relief. Both motions pertain to the conditions of his confinement at Oshkosh Correctional Institution. Since filing the motions, plaintiff has been

5

transferred to Oakhill Correctional Institution. The court will therefore deny both motions as moot.

Plaintiff has also moved for the appointment of a special prosecutor. The Attorney General, not this court, appoints special prosecutors. 28 U.S.C. § 515. Plaintiff's motion will be denied.

**IT IS THEREFORE ORDERED** that plaintiff's motions for preliminary relief (Docket #111 and #116) and motion to appoint a special prosecutor (Docket #122) are hereby **DENIED.**

**IT IS FURTHER ORDERED** that defendants' motion for summary judgment (Docket #113) is **DENIED** with respect to Defendant Glass. Defendants' motion is otherwise **GRANTED.** The clerk of court shall set this matter on for a scheduling conference.

Dated this   14th   day of November, 2005.

s/ William C. Griesbach
William C. Griesbach
United States District Judge